# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| Sylvester Belcher, | : | Case No. 1:09CV0627 |
| | : | |
| Petitioner | : | Judge Peter C. Economus |
| | : | |
| v. | : | Magistrate Judge David S. Perelman |
| | : | |
| Keith Smith, Warden, | : | |
| | : | **REPORT AND RECOMMENDED** |
| | : | **DECISION** |
| | : | |
| Respondent | : | |

In this action in habeas corpus, 28 U.S.C. §2254, petitioner challenges the constitutionality of his December 12, 2006 convictions pursuant to a jury trial of one count of aggravated robbery, once count of robbery, two counts of aggravated burglary, and one count of kidnapping, with a three-year firearm specification, upon which he was sentenced to five concurrent eight year terms of incarceration, with a consecutive three year term for the firearm specification, for an aggregate sentence of eleven years.[1]

Petitioner filed two pre-trial motions to suppress, including a motion to suppress statements made to the police at the time of his arrest alleging failure to give him *Miranda* warnings. That motion, however, was withdrawn after it became evident that such warnings had been provided.

---

[1]The indictment also included one year firearm specifications on each count, but after the jury could not agree as to the specifications the trial court dismissed the specifications on counts one through four.

1

The second, a motion to suppress evidence seized with a search warrant that was not shown to petitioner when the search was conducted, was denied in light of evidence produced at the suppression hearing indicating that petitioner's live-in girlfriend reviewed the search warrant and gave permission to law enforcement officers to search the premises.

On January 5, 2007, the petitioner appealed his convictions to the Ohio Eighth District Court of Appeals, alleging the following four assignments of error:

> I. Appellant was denied the effective assistance of counsel as guaranteed by the Sixth Amendment.
>
> II. The evidence was insufficient to support a three year firearm specification attendant to the first four counts of the indictment.
>
> III. The jury's guilty verdict relative to the three year firearm specification attendant to the first four counts of the indictment was against the manifest weight of the evidence.
>
> IV. The trial court erred when it granted the State of Ohio's motion to dismiss the one year firearm specification insofar as it deprived appellant the opportunity to have the jury consider the lesser included offense of the one year firearm specification.

On December 10, 2007 the appellate court affirmed the convictions.[2]   In that opinion the court summarized the facts of petitioner's case as follows:

> According to the facts, on September 3, 2006, Emma White

_____

[2]On August 13, 2007, while his direct appeal was pending, petitioner filed with the trial court a petition to vacate or set aside judgment of conviction alleging that he had been denied the effective assistance of trial counsel in light of counsel's failure to present evidence of his second 911 phone call, as well as failure to offer into evidence receipts showing that the purse which had been the subject of the robbery belonged to his fiance'. The petition was denied on August 21, 2007, after which petitioner filed, on September 25, 2007, an untimely notice of appeal of that decision, which was dismissed sua sponte (as untimely) on October 12, 2007.

2

drove to her cousin Lisa White's house to drop off a copy of her resume. She went to the window of her cousin's apartment and was greeted by her cousin. Lisa dropped her keys down from the second story porch to Emma so she could enter the apartment building. As Emma opened the door to go into the building, appellant ran up behind her, put his arm around her throat, and forced her into the entrance of the apartment building. With his other hand, he held an object to her back and told her, "I have a gun, bitch. Let go of the purse." She could feel something sticking into her back. Once inside, Emma was able to turn around to face appellant as she attempted to use a can of pepper spray.

The pepper spray was knocked out of her hand, and Emma's head was slammed into the wall several times. Emma testified that she stood face to face with appellant at a distance of five inches for approximately a minute and a half with a light overhead, thereby allowing her a clear view of his face and the clothes he was wearing. The victim described her attacker as a black male with a dark complexion, who was approximately 5 feel 11 inches and stocky. In addition, the victim stated that her attacker was wearing jeans, a black sweatshirt with a hood, white tennis shoes, sunglasses, and a baseball cap.

The attacker eventually ripped the purse from the victim's hands and ran out of the apartment building and into his car. Emma ran out behind the attacker and called 911. She informed the operator that she had just been robbed at gunpoint and gave the license plate number over the phone. The attacker viewed Emma calling the police in his rearview mirror and ran out of his vehicle to stop her. He reached into his pocket for the firearm when Lisa screamed out of the apartment building for the attacker to leave her cousin alone. The attacker then re-entered his vehicle and drove away.

(Footnote omitted.)

On December 31, 2007 petitioner, now acting *pro se*, appealed the appellate court

ruling to the Ohio Supreme Court, alleging the following five propositions of law:

**Proposition of Law No. I:** Appellant was denied the effective assistance of counsel as guaranteed by the Sixth Amendment.

3

**Proposition of Law No. II:** The evidence was constitutionally insufficient to support a three year firearm specification.

**Proposition of Law No. III:** The jury's guilty verdict of the offenses attendant to the firearm specification were against the manifest weight of the evidence.

**Proposition of Law No. IV:** The trial court violated appellant's due process rights when it did not allow the jury to consider the one year firearm specification.

**Proposition of Law No. V:** A criminal defendant is entitled to the effective assistance of appellate counsel as of right.

On April 9, 2008 the court denied petitioner leave to appeal and dismissed the appeal as not involving any substantial constitutional question. Petitioner did not appeal this decision to the United States Supreme Court.

On February 27, 2008, while his direct appeal to the supreme court was pending, petitioner filed a *pro se* motion to reopen his appeal pursuant to Rule 26(B) of the Ohio Rules of Appellate Procedure. The state appellate court summarized his proposed assignments of error as follows:

> In his first and second assignments of error, Belcher asserted that his appellate counsel was ineffective for failing to argue that his trial counsel was ineffective for not raising the following issues: failing to object to allied offenses; failing to subpoena police officers: failing to properly investigate the case to include interviewing witnesses and listening to the 911 tape; and failing to properly impeach witness testimony.

> \* \* \* \* \*

> In his third proposed assignment of error, Belcher argues that counsel was ineffective because he failed to raise the issue that he was held beyond ten days without a preliminary hearing in violation of R.C. 2945.71 and 2945.73(A).

4

On October 28, 2008 the appellate court denied the petition, holding that petitioner's affidavit in support was insufficient to comply with the rules, that claims raised therein were barred by res judicata, and that they would nonetheless fail on the merits.

Petitioner did not appeal the denial of his application to reopen to the Ohio Supreme Court.

Nearly two and a half years after his convictions, on April 27, 2009 the petitioner filed with the trial court a motion to vacate a void judgment, alleging that "he was never properly charged with an offense punishable under the laws of Ohio, because the pleader drafted the charges in the disjunctive instead of the conjunctive, which made all the counts void for uncertainty." That motion was denied on May 8, 2009.

On March 23, 2009 petitioner filed the instant petition, in which he raises the following two claims for relief:

> A.  **GROUND ONE:** The evidence was constitutionally insufficient to support a three year firearm specification.
>
> **Supporting FACTS:** The State of Ohio violated petitioners "Due Process" rights when they failed to prove the operability element of the firearm specification 2941.145 which is essential in obtaining a conviction for that enhancement. There was no factual evidence presented before or during trial of any deadly weapon used in efforts to commit the attendant crimes to the firearm specifications.
>
> B.  **GROUND TWO:** Under the Sixth Amendment of the United States Constitution the appellant is entitled to the effective assistance of counsel on an appeal of right.
>
> **Supporting FACTS:** Appellate counsel was ineffective when she failed to bring forth issues of trial counsel's errors. Appellate counsel failed to investigate the evidence surrounding the case.

5

The provisions of the Antiterrorism and Effective Death Penalty Act, "AEDPA," Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 26, 1996) are controlling herein as the instant petition was filed after the Act's effective date. Lindh v. Murphy, 521 U.S. 320 (1997).

The petition was timely filed in accordance with 28 U.S.C. §2244(d).

The respondent asserts that petitioner's second claim for relief, in which he alleges ineffective assistance of appellate counsel, must be dismissed as procedurally defaulted.

The exhaustion doctrine requires that before filing a petition in federal habeas corpus a defendant must utilize all available state remedies, through a motion or petition for review by the state's highest court, by which he may seek relief based upon an alleged violation of constitutional rights. Granberry v. Greer, 481 U.S. 129, 133 (1987). Such doctrine, although not of a jurisdictional nature, is based upon issues of comity, allowing the state courts the opportunity to correct any constitutional violation that may have occurred in its courts, as well as creating a complete record for review should the case eventually be heard in federal habeas corpus. Hafley v. Sowders, 902 F.2d 480, 482 (6th Cir. 1990).

A claim is deemed exhausted even if it has not been presented to the state's highest court when the petitioner is foreclosed from raising it in that forum either because the time for filing has expired or the petitioner is otherwise procedurally precluded from raising it. A default occurs in the state courts if the last state court rendering a decision makes a plain statement of such state procedural default. Harris v. Reed, 489 U.S. 255 (1989). When a petitioner fails to appeal a claim to a state's highest court and when the opportunity to do so is lost, the petitioner is said to have procedurally defaulted the claim and must prove cause and prejudice for such default. Wainwright v. Sykes, 433 U.S. 72, 87 (1977). Under this

6

standard of review a petitioner must show "cause for the noncompliance and . . . actual prejudice resulting from the alleged constitutional violation." Id. at 84.

Where a petitioner has failed to fairly present the factual and legal basis for a federal constitutional issue and would be barred from pursuing relief on that claim in the state courts[3] the petition should not be dismissed for failure of exhaustion, in light of the fact that there would then be no available state remedies. Hannah v. Conley, 49 F.3d 1193,1195-96 (6th Cir. 1995); Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994). However, the petitioner must then demonstrate cause for failure to fairly present the claims to the state courts and actual prejudice to his/her defense at trial or on appeal. Gray v. Netherland, supra at 162; Coleman v. Thompson, 501 U.S. 722, 750-51 (1991); Deitz v. Money, 391 F.3d 84, 808 (6th Cir. 2004).

The Sixth Circuit, in Maupin v. Smith, 785 F.2d 135 (6th Cir. 1986), delineated a four part approach on habeas corpus for determining whether a petitioner's claim is barred by the failure to observe a state procedural rule. First, the district court must determine whether there exists a state procedural rule with which the petitioner failed to comply. Then the court must determine whether the state court enforced the sanction for failure to comply. If so, it must then be decided whether failure to comply with the state procedural rule constitutes an adequate and independent ground for barring federal review. If all these questions are answered in the affirmative, the petitioner must satisfy the "cause and

---

[3]Under a longstanding Ohio procedural rule, a claim which could have been but was not raised on direct appeal would be barred from being raised in a delayed appeal or in a petition for post-conviction relief. See, Collins v. Perini, 594 F.2d 592, 593 (6th Cir. 1978).

7

prejudice" analysis set forth in <u>Wainwright</u>, <u>supra</u> at 138.

Turning to the present case, the respondent argues that petitioner's second claim for relief alleging ineffective assistance of appellate counsel for failure to raise particular errors of trial counsel was procedurally defaulted in the state court by reason of his failure to attach a sworn statement to his affidavit in support of the Rule 26(B) application to reopen his direct appeal, and his failure to appeal his claims of ineffective assistance of appellate counsel to the Ohio Supreme Court after the lower court denied his Rule 26(B) application. The state appellate court held in pertinent part:

> Initially we note that Belcher's affidavit is not sufficient to comply with App.R. 26(B)(2) which provides:
>
> An application for reopening shall contain all of the following:
>
> * * * * *
>
> (D) A sworn statement of the basis for the claim that appellate counsel's representation was deficient with respect to the assignments of error or arguments raised pursuant to division (B)(2)(c) of this rule and the manner in which the deficiency prejudicially affected the outcome of the appeal, which may include citations to applicable authorities and references to the record***.
>
> In his affidavit, Belcher asserted that the following sworn statement supports the deficient performance of counsel on appeal and the manner in which the deficiency prejudicially affected the outcome of the appeal. However, Belcher did not include a sworn statement. Applicant's failure to comply with App.R. 26(B)(2)(d) is a sufficient basis for denying the application for reopening. See, e.g., *State v. Towns* (Oct. 23, 1997), Cuyahoga App. No. 71244, reopening disallowed (May 4, 2000), Motion No. 306308, at 4-5.

In so doing, the court articulated a state procedural rule which had been breached, and

8

enforced the rule by finding that the failure to comply was in itself a valid reason to deny the application to reopen, satisfying the first two elements of the Maupin test.

Respondent contends that "As to the third part of the test, Ohio's Rule 26(B) has been held to be an adequate and independent basis upon which the State may rely to foreclose review of his federal claim in Ground Two[,]" citing cases holding that the timeliness requirement within Rule 26(B) was firmly established and regularly followed, so as to constitute an adequate and independent state procedural rule. See Monzo v. Edwards, 281 F.3d 568 (6th Cir. 2002), Scuba v. Brigano, 527 F.3d 479 (6th Cir. 2007), and Parker v. Bagley, 543 F.3d 859 (6th Cir. 2008). This case, however, poses a distinct question as to the third prong of Maupin, i.e., whether the requirement of a sworn supporting affidavit within Rule 26(B)(2)(d) was firmly established and regularly followed, so as to constitute an adequate and independent state procedural rule, a proposition which this Court finds to be true.

> App.R. 26(B)(2)(d) requires "a sworn statement of the basis for the claim that appellate counsel's representation was deficient with respect to the assignments of error or arguments raised *** and the manner in which the deficiency prejudicially affected the outcome of the appeal ***." This sworn statement is mandatory, and the failure to include such an affidavit is sufficient reason to deny the application. State v. Lechner, 72 Ohio St.3d 374, 1995 Ohio 25, 650 N.E.2d 449 and State v. Franklin, 72 Ohio St.3d 372, 1995 Ohio 8, 650 N.E.2d 447. Perry's application is unsupported by an affidavit, which requires that we deny the application for reopening.

State v. Perry, Case No. 90497, 2009 Ohio 2245, 2009 Ohio App. LEXIS 1898 (Cuyahoga Cnty. 2009). Accord, State v. Young, Case No. 70858, 2007 Ohio 6481, 2007 Ohio App.

9

LEXIS 5673 (Cuyahoga Cnty. 2007), citing State v. Phillips, Case No. 79192, 2001 Ohio

App. LEXIS 5512 (Cuyahoga Cnty. 2001); State v. Lechner, supra; State v. Russell, Case

No. 73713, 1999 Ohio App. LEXIS 6302 (Cuyahoga Cnty. 1999); and State v. Parker, Case

No. 71260, 1997 Ohio App. LEXIS 5098 (Cuyahoga Cnty. 1997).

There being no mention of cause for this procedural default in petitioner's responsive

briefing, this claim is subject to dismissal on this basis.

Respondent also argues that petitioner committed a procedural default by failing to

appeal to the Ohio Supreme Court the denial of his Rule 26(B) application, so that his claims

of ineffective assistance of appellate counsel were not presented to that court.  Petitioner

counters that those claims were raised when he filed his direct appeal to the Ohio Supreme

Court and included a proposition of law alleging ineffective assistance of appellate counsel.

On direct appeal to the supreme court petitioner included a claim of ineffective

assistance of appellate counsel premised upon counsel's alleged failure in the lower

appellate court to raise issues of ineffective assistance of trial counsel, including trial

counsel's failure to assert that petitioner had been charged with allied offenses of similar

import, failure to subpoena the police officers who responded to the victim's 9-1-1 call,

failure to investigate the facts (such as not investigating the crime scene to verify the lighting

and not obtaining statements from residents of apartments nearby the crime scene), failure to

ask questions proposed by petitioner during trial, failure to address statements made by the

victim to the 9-1-1 dispatcher, and failure to "investigate the original police report."

Those claims parallel the claims raised in the Rule 26(B) application to reopen, with

the exception of the claim raised in the application (but not raised on direct appeal) of

10

ineffective assistance of appellate counsel for failure to argue trial counsel's ineffectiveness

for not challenging his having been held for more than ten days without a preliminary

hearing. The latter claim, however, is not raised as a claim for relief in these proceedings.

This Court, therefore, finds that the claims of ineffective assistance of appellate counsel

raised herein were presented to each of the state courts, rendering the failure to appeal the

denial of the Rule 26(B) application to reopen a distinction without a difference.

Procedural default aside, petitioner's claims also fail upon merits review.

The role of a federal district court in habeas corpus is set forth in Title 28 U.S.C. §

2254 (d) which provides:

> (d) An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court
> shall not be granted with respect to *any claim that was
> adjudicated on the merits in State court proceedings* unless
> the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to,
> > or involved an unreasonable application of,
> > clearly established Federal law, as determined
> > by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on
> > an unreasonable determination of the facts in
> > light of the evidence presented in the State
> > court proceeding.

(Emphasis added.)

The United States Supreme Court has held that the clauses "contrary to" and

"unreasonable application of" as found in §2254(d)(1) have independent meanings;

Williams v. Taylor, 529 U.S. 420 (2000), with the state court adjudication being "contrary

to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that of the Supreme Court];" and with the state court adjudication involving an "unreasonable application of clearly established Federal law, as determined by the Supreme Court" "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "if the state court either unreasonably extends a legal principal from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principal to a new context where it should not apply or unreasonably refuses to extend that principal to a new context where it should apply." 120 S.Ct. at 1519-1520. In deciphering the "unreasonable application" clause this Court must inquire as to whether "the state court's application of clearly established federal law was objectively unreasonable." Id. at 1521. Even if the state court decision resulted in an incorrect application of federal law, if that decision is reasonable it will stand. Id. See, Machacek v. Hofbauer, 213 F.3d 947, 953 (6th Cir. 2000).

In his first claim for relief the petitioner challenges the sufficiency of the evidence relied upon to convict him at trial.

The standard for addressing an argument that a conviction is not supported by sufficient evidence was enunciated in Jackson v. Virginia, 443 U.S. 307, 319 (1979), as follows: "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a

12

reasonable doubt." Accord, McKenzie v. Smith, 326 F.3d 721, 727 (6th Cir. 2003);

Matthews v. Abramajtys, 319 F.3d 780, 788 (6th Cir. 2003). In reaching its determination as

to the sufficiency of the evidence this Court may not substitute its determination of guilt for

that of the factfinder and may not weigh the credibility of the witnesses. Herrera v. Collins,

506 U.S. 390, 401-402 (1993); Jackson v. Virginia, 443 U.S. at 319, n.13; Brown v. Davis,

752 F.2d 1142 (6th Cir. 1985).

That standard has been modified somewhat by §2254(d) in that questions of

sufficiency of the evidence are mixed questions of law and fact upon which a writ may be

granted only if the adjudication of the state court "resulted in a decision that was contrary to,

or involved an unreasonable application of, clearly established Federal law, as determined by

the Supreme Court of the United States," §2254(d)(1), or was based upon "an unreasonable

determination of the facts in light of the evidence presented" at petitioner's trial,

§2254(d)(2). Starr v. Mitchell, unreported, Case No. 98-4541, 2000 U.S.App. LEXIS

25646,*9-*10 (6th Cir. October 6, 2000).

The state appellate court reviewed petitioner's claims that he was convicted without

sufficient proof and held in pertinent part:

> Second assignment of error: "The evidence was insufficient to
> support a three year firearm specification attendant to the first
> four counts of the indictment."
>
> Third assignment of error: "The jury's guilty verdict relative to
> the three year firearm specification attendant to the first four
> counts of the indictment was against the manifest weight of
> the evidence."

* * * * *

13

AO 72A
(Rev. 8/82)

Because of the substantial interrelation between appellant's second and third assignments of error, we shall address them together. Appellant argues in his second and third assignments of error that the evidence is insufficient to support a three-year firearm specification and is against the manifest weight of the evidence.

In evaluating a challenge to the verdict based on manifest weight of the evidence, a court sits as the thirteenth juror and intrudes its judgment into proceedings which it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury which has "lost its way." *State v. Thompkins*, 78 Ohio St.3d 380, 1997 Ohio 52, 678 N.E.2d 541. As the Ohio Supreme Court declared:

> "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'

> "***The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id. at 387. (Internal citations omitted.)

However, this court should be mindful that the weight of the evidence and the credibility of witnesses are matters primarily

14

for the trier of fact, and a reviewing court must not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the state has proven the offense beyond a reasonable doubt. *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, at paragraphs one and two of the syllabus. The goal of the reviewing court is to determine whether the new trial is mandated. A reviewing court should only grant a new trial in the "exceptional case in which the evidence weighs heavily against a conviction." *State v. Lindsey*, 87 Ohio St.3d 479, 483, 2000-Ohio-465, 721 N.E.2d 995. (Internal citation omitted.)

Pursuant to R.C. 2941.141, the one-year firearm specification provides the following:

> "(A) Imposition of a one-year mandatory prison term upon an offender under division (D)(1)(a) of section 2929.14 of the Revised Code is precluded unless the indictment, count in the indictment, or information charging the offense specifies *that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense.* The specification shall be stated at the end of the body of the indictment, count, or information, and shall be in substantially the following form:
>
> "SPECIFICATION (or, SPECIFICATION TO THE FIRST COUNT). The Grand Jurors (or insert the person's or the prosecuting attorney's name when appropriate) further find and specify that (set forth that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense.)
>
> "(B) Imposition of a one-year mandatory prison term upon an offender under division (D)(1)(a) of section 2929.14 of the Revised Code is precluded if a court imposes a three-year or six-year mandatory prison term on the offender under that division relative to the same felony."

(Emphasis added.)

Pursuant to R.C. 2941.145, the three-year firearm specification provides the following:

> "The offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense."

R.C. 2923.11 defines a firearm as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of any explosive or combustible propellant." This definition includes an "unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." R.C. 2923.11(B)(1).

This appellate court previously addressed this issue in *State v. Nicholson*, Cuyahoga App. No. 85977, 2006 Ohio 1569, and found the following:

> "According to the Ohio Supreme Court, a firearm specification can be proven beyond a reasonable doubt by circumstantial evidence. That evidence may consist of the testimony of lay witnesses who were in a position to observe the instrument and the circumstances of the crime.

> "Furthermore, in [*State v. Thompkins* (1997), 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541] the Ohio Supreme Court rejected the view that the circumstantial proof of operability must consist of certain recognized indicia, such as bullets, the smell of gunpowder, bullet holes, or verbal threats by the user of the weapon that he or she would shoot the victim." (Citation omitted.)

In the instant case, the victim, Emma White, testified that appellant put his arm around her throat, held a gun to her back

16

and told her, "I have a gun, bitch.  Let go of the purse."  Emma
also testified that she could feel the gun sticking into her back,
and that appellant slammed her head into the wall several
times during the attack.  Emma also testified that she could see
the gun weighing down the front of appellant's hooded jersey.
In addition, the victim told the 911 operator that she had just
been robbed at gunpoint.  A number of cases on this issue
support a conviction where the appellant states that he has a
gun and indicates that he will use it, even if no one sees the
gun and the gun is never produced at trial and, therefore,
cannot be tested to determine whether it is operable.  *State v.
Jeffers* (2001), 143 Ohio App.3d 91; *State v. Haskins*, Erie
App.No. E-01-016, 2003-Ohio-70; *State v. Watkins*, Cuyahoga
App. No. 84288, 2004-Ohio-6908; *State v. Hampton*,
Hamilton App. No. C-01059, 2002-Ohio-1907; *State v.
Knight*, Greene App. No. 2003 CA 14, 2004-Ohio-1941.  The
defendant in each of these cases was convicted of a firearm
specification, although the gun was not seen during the event.

As previously stated, Emma testified appellant told her he had
a gun; she could feel the gun sticking in her back; she could
see the gun weighing down the front of appellant's hooded
jersey; and she told the 911 operator that she had just been
robbed at gunpoint.

Accordingly, we conclude that the evidence is sufficient,
supports the three-year firearm specifications, and is not
against the manifest weight of the evidence.

Appellant's second and third assignments of error are
overruled.

(Footnotes omitted.)

In finding the evidence sufficient to prove the elements of the crimes charged the

state court relied entirely on state authorities, which neither resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established federal law, as

determined by the United States Supreme Court, nor was the decision based upon an

unreasonable determination of the facts in light of the evidence presented.  That being so,

petitioner's first claim for relief is without merit.

In his second claim for relief the petitioner argues that he was denied the effective assistance of appellate counsel.

A petitioner claiming ineffective assistance of counsel must demonstrate that counsel's conduct was so far below acceptable standards of representation that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment to the United States Constitution, and that such deficient performance so prejudiced the defense as to render the trial unfair. Strickland v. Washington, 466 U.S. 668 (1984). See also, United States v. Bavers, 787 F.2d 1022 (6th Cir. 1985). Disagreement by a defendant with tactics and/or strategy will not support a claim of ineffective assistance, and a petitioner in habeas corpus must overcome a presumption that challenged conduct of counsel was a matter of strategy, Strickland, 466 U.S. at 689. Accord, Wilson v. Yukins, unreported, 1999 U.S.Dist. LEXIS 7644 (E.D.Mich. 1999). The prejudice prong of the test may be satisfied by a showing that counsel's error deprived the petitioner of a fundamentally fair trial which resulted in a verdict lacking in reliability. Kimmelman v. Morrison, 477 U.S. 365 (1986).

The Sixth Amendment right to effective assistance of counsel extends to appellate counsel on direct appeal of a criminal conviction. Evitts v. Lucey, 469 U.S. 387 (1985). The Sixth Circuit Court of Appeals has held that:

> In order to succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show errors so serious that counsel was scarcely functioning as counsel at all and that those errors undermine the reliability of the defendant's convictions. Strategic choices by counsel, while not necessarily those a federal judge in hindsight might make, do not rise to the level of a Sixth Amendment violation.

18

McMeans v. Brigano, 228 F.3d 674, 682 (6th Cir. 2000), cert. denied, 532 U.S. 958 (2001) (Citations omitted.). The proceedings on appeal must be reviewed in order to establish whether prejudice has been shown, i.e., whether "there is 'a reasonable probability that, but for his counsel's [failings]...,[the defendant] would have prevailed on his appeal.'" Mapes v. Tate, 388 F.3d 187, 194 (6th Cir. 2004), quoting Smith v. Robbins, 528 U.S. 259, 285 (2000). "Probability sufficient to undermine confidence in the outcome" constituted "reasonable probability." Burton v. Renico, 391 F.3d 764, 773 (6th Cir. 2004); Maples v. Stegall, supra at 437.

Under the AEDPA this Court must first determine whether the state court's application of the Strickland standard was objectively unreasonable. Alley v. Bell, 307 F.3d 380, 400 (6th Cir. 2002), quoting Bell v. Cone, 152 L.Ed.2d 914, 122 S.Ct. 1843, 1852 (2002) ("under §2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly. Rather, [petitioner] must show that the [state court] applied Strickland to the facts of his case in an objectively unreasonable manner." (Citation omitted.)).

As previously noted, the state appellate court which denied petitioner's Rule 26(B) application to reopen his direct appeal found that he had procedurally defaulted the claims raised therein. In the alternative, the court also determined that his claims of ineffective assistance of appellate counsel, which parallel those raised in the second claim for relief in this proceeding, would also fail on the merits, holding in pertinent part:

> Notwithstanding the above, in his application, Belcher
> submitted three proposed assignments of error. In his first and
> second assignments of error, Belcher asserted that his

19

appellate counsel was ineffective for failing to argue that his trial counsel was ineffective for not raising the following issues: failing to object to allied offenses; failing to subpoena police officers; failing to properly investigate the case to include interviewing witnesses and listening to the 911 tape; and failing to properly impeach witness testimony.

A review of his direct appeal demonstrates that Belcher, through counsel, previously argued that he was denied the effective assistance of counsel as guaranteed by the Sixth Amendment. Specifically, Belcher argued that counsel was ineffective because he failed to subpoena necessary receipts; failed to ask for a continuance to be able to subpoena the receipts; failed to investigate the defendant's case; and failed to object to the State's dismissal of a one-year firearm specification.

Except for the failure of counsel to properly investigate the case, Belcher now raises different instances of ineffective assistance of counsel. Nevertheless, the issue of ineffective assistance of trial counsel was raised and argued before this court. Accordingly, res judicata prohibits this court from reopening the original appeal. See, generally, *State v. Perry* (1967), 10 Ohio St.2d 175, 226 N.E.2d 1204. We also find that applying the doctrine of res judicata would not be unjust under these circumstances. *State v. Murnahan* (1992), 63 Ohio St.3d 60, 584 N.E.2d 1204.

Furthermore, in *Strickland v. Washington* (1984), 466 U.S. 688, 80 L.Ed.2d 674, 104 S.Ct. 2052, the United States Supreme Court stated that a court's scrutiny of an attorney's work must be highly deferential. The court further stated that it is too tempting for a defendant to second-guess his attorney after conviction and that it would be all too easy for a court to conclude that a specific act or omission was deficient, especially when examining the matter in hindsight. Additionally, the United States Supreme Court has upheld that appellate attorney's discretion to decide which issues he or she believes are the most fruitful arguments. "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue, if possible, or at most on a few key issues." *Jones v. Barnes* (1983), 463 U.S. 745, 77 L.Ed.2d

20

987, 103 S.Ct. 3308.  Accordingly, we will not second guess appellate counsel's decision on which alleged instances of ineffective assistance of counsel to raise and argue.

In rejecting claims of ineffective assistance of trial counsel on direct appeal the court held that even if trial counsel had performed as petitioner described, the trial results would not have been affected in light of the following:

> Appellant's voice and photograph were both identified by the victim, his license plate number was given to the 911 operator by the victim, the clothing worn by the perpetrator was found in appellant's house, appellant reported his vehicle stolen five minutes after the incident occurred, appellant gave multiple versions of the events that occurred on that day, and there was no evidence that corroborated either of appellant's versions of what happened.  Therefore, even if appellant's counsel had produced a receipt of the purse, it would not have changed the results of the trial.

That same strong evidence of guilt would have been present even if petitioner's appellate counsel had raised the ineffective assistance of trial counsel in the particulars outlined herein.

This Court finds that the state appellate court's conclusion that petitioner's counsel on appeal did not render constitutionally ineffective assistance was not premised on an objectively unreasonable application of Strickland to the facts of this case, nor was it an unreasonable determination of the facts in light of the evidence presented.  Consequently, petitioner's second claim for relief must fail.

In light of all the foregoing it is concluded that no claim of constitutional violation has been presented requiring further proceedings prior to disposition on the merits and it is,

AO 72A
(Rev. 8/82)

therefore, recommended that the petition be dismissed without further proceedings.


DAVID S. PERELMAN
United States Magistrate Judge


DATE: December 28, 2009


## OBJECTIONS

Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within ten (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

22